The counsel for Bedinger, presented the following petition for re-hearing.

The counsel for Bedinger, solicit a re-argument of his case:
lst‘ ®ecai,se be respectfully suggests that the court have in some degree, misapplied the evidence to the case, and not ascertained the facts of the case according to the evidence when duly weighed. For a minute detail of the evidence, the counsel refer to the manuscript A. herewith presented.
It is also believed, that that part of the opinion which affixes a construction to the contract, between Bedinger and Bartlett, needs an examination.
It is further submitted to the consideration of the court. If they have not settled a principle most dan *557 gerous in practice, and against a current of deei-sions of this court. In Hunt and Saunders this court decide that a parol contract for land is void, and that. the vendee can recover the deposit back^ notwithstanding the vendor tender a deed, or in his defence declare his readiness to make a deed by answer or plea. This case is not solitary, but the principle settled in it has been considered by all lawyers and judges, as the settled law of the land for about fifteen years; and I respectfully ask how this can be law, if the opinion as expressed is correct, to-wit: That, if Bartiett made parol promises that the water should be common, and thereafter sold all title, &c. t© Bedinger, not excepting the water, streets, &c. promised, that his subsequent deed is available against his written contract by reason of his parol promises and declarations. It is admitted on all hands that his bond to Williams did not embrace the streets, alleys and springs, and that his deed varied from his bond, and you say, that as he chose to recognize his parol contract with the purchasers of lots, you are of opinion that this relates back to his promise. Now I ask how do you getthis equity by parol? By swearing that such parol contract was made by all the ways that the statute against Frauds and Perjuries forbid you to prove a title to land. If the principle settled in this case is correct what man is safe, if he buy land, holding a bond for it, when he bought, say that he knew that there was a parol agreement; but he also knew, if he knew what this court had repeatedly decided, if he knew what the statute of his country was, that this parol agreement was void'absolutely, that no claim could be asserted, and yet if the vendor chose after he made a valid and legal sale, to recognize an invalid and void sale, he can thereby defeat his legal contract. It is believed that this court has ever heretofore held a knowledge of such contract as wholly immaterial, and yet the court lays stress upon the Pact of notice as proved by Ballengall and others; take this opinion as it stands and what does it establish?
1st. That a void contract can be made to overreach a valid one.
2d. That notice of a void contract, makes void a valid ®ne.
*558 3d. That a parol contract may be added to a written one, to enlarge and give it efficacy, and this parol be proved by parol, or in other words, by parol contracts, for land, proved by parol, a valid claim can defeated; but with whom did Bartlett contract, and what were the terms of the contract with Williams? No. With whom for these alleys, springs, streets, &c? With no one, with no body, corporate, sole or aggregate; no writing was exhibited of a contract with all the world; but a simple and parol contract declared to the crowd, is by the opinion made to hpve the force, body and shape of a contract. Suppose any of these purchasers,before Bedinger’s bond,had died their bill, or brought their action at law for any of these streets, alleys, &c. and to be permitted to take the land under water, what would the chancellor say? Surely not, that he had power to coerce a title; grant that these highways may be opened, and the use of these springs be secured. Then, I humbly conceive that the court have not done equity between the parties; this court cannot certainly understand Bartlett as selling the fee in the alleys and water; but that he only intended to pass the right of way and the use of the springs, for medicinal or family purposes; notin fee, did this parol contract authorize any but Bartlett to make salt; and if the town corporation or other tribunal should shut up the alleys or streets, as ways that, the fee should be in abeyance any more than away over a farm? Surely not. What then can be made of the parol promise about springs, streets and alleys? why that the use should be to the inhabitants, but the fee in Bartlett? The fee was therefore in Bartlett, and is surely embraced in the contract for all the balance of his land, &c. Under a deed with the same words,, the land, the whole fee, would pass subject to the estate or use created. Has not the court erred, in not decreeing to Bedinger the fee, if that fee is subject to the use according to the parol agreement alleged?
I contend that if a mine or a quarry of jewels, were under the streets and alleys, these are Bartlett’s; his land extended to the centre of the earth, and up to heaven, so of the land under the water. God and the state have said the river Licking is a highway for every one, and yet, is not the fee under water, Bart* *559 Sett’s, and does it not pass to Bedingermnder his contract, and just as much and no more than the fee in the lands under water of the spring, and the fee sim-pie beneath the streets, alleys, &c.? Your honours ought certainly to have decided in whom was the fee to the springs and alleys, at the date of Bedinger’s contract, and after, until the conveyance to the trustees of the town; if not in the few who bought lots conveyed to them by parol; if notin the commonwealth ; if in no one else but Bartlett, and Bartlett-sold to Bedinger, all the land he had unsold, he surely sold it to be held and used to all the purposes he could have used it. It cannot be pretended that Bartlett reserved to himself any property, after he sold all to Bedinger, that he intended ■ to, reserve to himself; the fee in the streets and alleys, and the fee and common use of the spring, this is not, and ought not to be contended for. Ought not the court to have settled, what kind of a use the lot holders had in the salt spring; if to drink and use the water, very well; if to use it to themselves and other heirs, for ever, very well; if every lot holder had this interest; if all were tenants in fee by the parol, surely-they all, and each may sell and grant it, as other rights in fee or equity can be sold; but this view will not do. The court must admit that the usufruct of the water, was all that was promised, and that the right to sell the fee in the streets, alleys and salt spring, was never parted with, and to use all that pertained to either, as the owner in fee was reserved. Suppose I convey to my neighbor a right of" way, the right to navigate my water course to pass his water over my land, does not the fee in these grants, notwithstanding remain in me and lie in grant? Does not the fee in the commonwealth’s highway, itself lie in grant and descend; of this there can be no doubt, the owner is not to obstruct the person having the use, and this is all chancery or law will see done. Bedinger filed his hill to be let into the fee as Bartlett held it, and bound himself to convey it. The fee I have shewn was then in no others but Bartlett, and yet you have refused to decree it.
There is a fatal error not noticed by the court. In the decree below it was gross error to try the cause by halves, Bartlett’s heirs were necessary parties, and. *560 the fee was clearly in them for the use of Bedinger, if their father sold it to Bedinger; Bedinger claimed under them, so did Whittamore, and it was essential cour^ sh°uld settle between them and Bed-iuger, what they were bound to convey, and Bedinger’s recovery in this case, would be measured by his contract with Bartlett; and yet you try the cause and decide it in favour of Bartlett’s heirs, without their being before the court. Again, it is considered that the court has failed in its duty upon the whole case. This is a bill to settle boundary between persons deriving title from the same source; there are many persons claiming, and these circumstances independent of the fact, that Bedinger had not acquired the Segal title, forms a right to go into chancery. The defendants contest the boundary. Was it not the duty of the court, to have the boundaries formed, and to direct Bartlett’s heirs, and the trustees and all others to convey to Bedinger? Boundary, fixed it, where the court will. But the court say, that one end of the boundary, the south spring, is not a subject of equity, because it is not shewn, that Bedingeris interrupted. Here the court seems to have lost sight of the fact, that this decree is absolute, and that Bedinger is suing for a title, and that he was praying to have settled a part of his boundary in which he had been interrupted, and that the defendants claim to the centre of the gum.
It is surely enough in a bill in chancery, that the complainant shew, that he is interrupted in a part of his boundary; and that (he whole line is contested, to • give the chancellor jurisdiction. And can it be right for this court, in a case so circumstanced, to say, there is no necessity, now, to settle the boundary? Surely not. But if the court were to dismiss the suit, because they would prefer an interruption; that is, let this suit beget another suit, ought the bill to be dismissed absolutely, and can the court renew Us remark, that for future interruptions, if he hath any, a court of chancery would relieve, without having great doubt of the accuracy of the legal opinion, so expressed? Had the court garbled the controversy, and dismissed the bill, for part, absolutely; and for this part, without prejudice, the opinion could scarce. *561 lyhave been sustained, as it was an entire subject ■controversy, to wit: Boundary; and yet, without any reservation of the right, hereafter, to sue. The court seem to imply, that, the right exists to sue again, and the attention of the court is seriously invited to that part of the opinion, in which the court say,if he have right to the south spring, let him enter, &c.
May not this be said to every man, who files his bill, to settle boundary; and this most valuable power of chancery, thereby become worse than useless. This court do not deny the right ol Bedinger to come into chancery, to settle boundary. The right cannot be denied on authority. His case is one. of the very cases,given where chancery ought to relieve; where the suit in chancery, will supersede divers suits at law, and.permanently fix the boundary; and yet he is dismissed, without a singlé inch of his boundary being ascertained or fixed. His cause is tried, as to fraudulent purchasers, with notice, if they passed his boundary, while the suit against his vendor is pending. Indeed, the court has split the cause, and left him to a scuffle with Bartlett’s heirs. - Suppose, in the suit with Bartlett’s heirs, you decree, as you may, the fee in the land, under the water of Licking, and the springs, and the fee in the alleys, &c, can you decree a conveyance! No; and for the reason that Whittamore, &c. whom, you admit, bought with notice, hath the legal title, nor can you go back to Whittamore; thus, by'splitting up the cause, you disable yourselves, to do justice, however apparent the right, when all the views of the casé are taken. A re-hearing is prayed. R. WJCKLTFFE.
There are cases, where there may proper parties, who are not necessary parties. In such cases, the cause may be tried as to a part only, of the defendants. But where all the defendants are necessary parties, it is error to try the cause as to part of the defendants; and for that reason, the decree ought to be reversed, and the cause remanded for further proceedings. See the case of Cox’s heirs vs. Strode, IE Bibb. JOHN TRIMBLE.